UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| BRUCE DWAYNE CARRINGTON,<br>Institutional ID No. 1208439,<br>SID No. 5816997,<br>TDCJ No. 1032116,<br><br>            Plaintiff,<br><br>v.<br><br>ROBERT ROMERO,<br>Correctional Officer,<br><br>            Defendant. | CIVIL ACTION NO.<br>5:09-CV-175-BG<br>ECF |

**<u>REPORT and RECOMMENDATION</u>**

*Pro se* plaintiff Bruce Dwayne Carrington, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983, alleging that Robert Romero violated his constitutional rights by using excessive force. The United States District Court transferred this action to the United States Magistrate Judge for further proceedings on August 19, 2009. The transfer order directed the Magistrate Judge to transfer the action back to the docket of the District Court and file proposed findings of fact, conclusions of law, and recommendations for the disposition of the case in the event that the Plaintiff or any of the Defendants did not consent to proceed before the Magistrate Judge.

On December 8, 2009, the Magistrate Judge conducted a hearing pursuant to *Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985), and at the hearing Carrington consented to the Magistrate Judge exercising jurisdiction over the case. After considering the allegations in Carrington's complaint and his testimony under oath, the court found that he had stated claims

sufficient to require an answer or other responsive pleading by Romero, and the court ordered Romero to answer the complaint. After Romero answered the complaint the court offered him the opportunity to consent to the Magistrate Judge exercising jurisdiction over the case. Romero declined to consent.

The undersigned has disposed of all non-dispositive issues. Pursuant to the order entered on August 19, 2009, the undersigned files this Report and Recommendation with findings of fact, conclusions of law, and recommendation for the disposition of this case.

I. **CARRINGTON'S COMPLAINT AND BACKGROUND INFORMATION**

    A. **The Complaint and Carrington's Memorandum**

In his complaint Carrington alleges that on June 10, 2008, Officers Romero, Sapp, Boggs, and two unknown officers removed Carrington and his cell-mate from their cell to search it. (R1-1 at 4). Carrington asserts that Romero handcuffed and held him in the hallway outside of the cell during the search. Carrington alleges that in the hallway he and Romero engaged in a verbal confrontation, and Romero became angry and slammed Carrington's head into the wall. Carrington contends that before Romero attacked him, none of the guards ordered him to be quiet or stop talking, and that he was not resisting Romero. (*Id.*).

As for Carrington's injuries, he asserts that a physician's assistant ("PA") examined him five days after the incident on June 15, 2008, and he reported to her the following symptoms: headaches, blurred vision, and disorientation when looking left or right. (*Id.*). Carrington states that the PA diagnosed him with a slight concussion. (*Id.*). Carrington claims that before the incident he did not need glasses, but now an ophthalmologist has determined that he needs glasses. (*Id.*).

2

Carrington asserts that from June 10, 2008, until January 21, 2009, he took 1600 milligrams ("mg") of ibuprofen per day for chronic headaches. (*Id.*).

### B. Authenticated Records

Carrington filed a Step-1 grievance on June 23, 2008, alleging that Romero slammed his head into a wall. (Authenticated Records ("AR"), Folder 1 at Grievance No. 2008166548). Carrington asserted that Romero called him a "nigger" and his mother a "nigger bitch." Carrington admitted that in response he called Romero a "Mexican"and he said a "few choice words" about Romero's mother. Carrington alleged that following the exchange of insults Romero slammed his head into the wall, and that after the attack Romero and he continued to "verbally assault" each other. The response to the grievance was that there was no evidence that Romero had assaulted Carrington. (*Id.*).

On July 30, 2008, Carrington filed a Step-2 grievance, alleging again that Romero assaulted him. (AR, Folder 1 at Grievance No. 2008166548). Carrington explained his injuries and asserted that his long distance vision had become impaired after the alleged assault. The response to the grievance was that the Step-1 grievance adequately addressed Carrington's claims. (*Id.*).

The records custodian asserted in her affidavit that no guard reported using force against Carrington on or about June 10, 2008.

According to the authenticated medical records on June 10, 2008, which was the date of the alleged incident, a nurse examined Carrington at his cell in the evening. Carrington reported to the nurse that an officer had slammed his head into a wall. Carrington stated that he would become disoriented when he shook his head from side-to-side. The nurse reported that there was

3

no fluid in Carrington's ears, that he had good grip in both hands, and that his eyes were equal and reactive.

The records showed that on June 18, 2008, a nurse administered a visual acuity test to Carrington. The nurse reported that Carrington's vision was 20/70 in his right eye and 20/50 in his left eye. The nurse also noted that Carrington was complaining of dizziness with his peripheral vision. The nurse referred Carrington to the Optometry Department.

A record dated July 27, 2008, shows that Carrington complained to a nurse that he was having bad headaches during the night; Carrington reported that the headaches started occurring after he was shoved against the wall.

The medical records show that between June 13, 2008, and July 12, 2008, Carrington was taking one 800 mg tablet of ibuprofen per day and that he resumed taking ibuprofen on August 18, 2008, taking it until January 21, 2009.

According to the medical records, an ophthalmologist examined Carrington on November 7, 2009, and determined that he needed glasses. The ophthalmologist reported that Carrington's vision was 20/70 in his right eye and 20/50 in his left eye.

### C. Carrington's *Spears* Hearing Testimony

At the *Spears* hearing Carrington testified that neither Romero nor any other officer instructed him to be quiet before his head was slammed into the wall. Carrington stated that he was not sure whether he or Romero made the first comment.

## II. STANDARD OF REVIEW

Because Carrington was permitted to proceed *in forma pauperis*, his complaint is subject to screening under 28 U.S.C. § 1915(e)(2), which requires dismissal of an action brought *in forma*

4

*pauperis* if the court determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. The court may dismiss such complaints based upon the plaintiff's allegations, testimony obtained at a *Spears* hearing, and upon authenticated prison records. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (acknowledging that dismissals may be based on adequately identified or authenticated records).

An action should be dismissed for failure to state a claim if the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Iqbal*, 556 U.S. at __, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2))). "Moreover, the complaint must allege 'more than labels and conclusions,' 'a formulaic recitation of the elements of a cause of action will not do,' and 'factual allegations must be enough to raise a right to relief above the speculative level.'" *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555). An action is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831-32, 104 L.Ed.2d 338 (1989). An action lacks an arguable basis in law if it is based on an "undisputably meritless legal theory" and lacks an arguable basis in fact "if the facts alleged are clearly baseless." *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citations omitted).

The court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

## III.    DISCUSSION

Under the Eighth Amendment, a correctional officer's use of excessive force against a prisoner may constitute cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 4, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). A prisoner establishes an Eighth amendment violation by showing that the use of force was an "unnecessary and wanton infliction of pain." *Id.* at 5 (quotation omitted). "[W]hether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 6 (quotation omitted).

Factors for courts to consider in determining whether the use of force was wanton and unnecessary include the following: (1) the extent of the injury; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992). The injury required to establish an excessive force claim "is related to the amount of *force* that is constitutionally permissible in the context in which the injury occurs." *United States v. Gonzalez*, 463 F.3d 560, 572 (5th Cir. 2006).

The Supreme Court recently clarified that the core judicial inquiry in excessive force cases was the nature of the force, not the extent of the injury. *See Wilkins v. Gaddy*, __ U.S. __, 130 S.Ct. 1175, 1177 (2010) (holding that the 4th Circuit erred when it looked primarily to the extent of the inmate's injury, rather than the amount of force used).

Carrington alleges that he was handcuffed when Romero slammed his head into the wall. Although Carrington acknowledges that he was insulting Romero at the time of the alleged attack, the insults do not provide a basis for the use of force because Carrington alleges that he was handcuffed and not actively resisting Romero. *See Pigram v. Chaudoin*, 199 Fed. App'x 509, 513 (6th Cir. 2006) (holding that "a slap to the face of a handcuffed suspect–even a verbally unruly suspect–is not a reasonable means of achieving anything more than perhaps further antagonizing or humiliating the suspect"). Carrington's allegation that he was not warned before the use of force, if proven to be true, shows that the use of force was not made in a good faith effort to maintain discipline or that an effort was made to temper the severity of the force used. *See Thomas v. Comstock*, 22 Fed. Appx. 439, 442 (5th Cir. 2007) (explaining how an officer's actions before and after the use of force showed whether he ensured that the amount of force and the resulting injury would be minimal). Furthermore, Carrington's alleged injuries appear to be more than *de minimis* because he suffered from chronic headaches and a change in his vision. *Hudson*, 503 U.S. at 10. Accordingly, Carrington has alleged facts to show an excessive use of force.

## IV.     RECOMMENDATION

For the foregoing reasons, the district court should find that the complaint is sufficient to survive the preliminary screening required by 28 U.S.C. § 1915(e)(2).

## V. RIGHT TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Serv. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: August 30, 2010.

NANCY M. KOENIG
United States Magistrate Judge